## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

COLORADO MOTOR CARRIERS ASSOCIATION,

      Plaintiff,

      v.

TOWN OF VAIL and POLICE CHIEF RYAN KENNEY,

      Defendants.

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiff, Colorado Motor Carriers Association (CMCA), by counsel, files its Verified Complaint for Declaratory and Injunctive Relief (Complaint) against Defendants, Town of Vail (Vail) and Police Chief Ryan Kenney acting in his official capacity, and states as follows:

### INTRODUCTION

1.     This action seeks a declaration that the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c), (the FAAAA) and the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) (the ADA) preempt the enforcement of the ordinance Vail adopted to restrict motor vehicle access to certain areas within Vail, because the ordinance relates to the "price, route, or service" of motor and air carriers.

2.     Deregulation, at its core, is the intentional extrication of government interference from private contractual arrangements as manifested by the demands of the market.

3.      In 1978, Congress deregulated the airline industry and enacted the ADA to ensure that "maximum reliance on competitive market forces" would further "efficiency, innovation, and low prices" as well as variety and quality of air transportation services. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992).

4.      To ensure that states would not undo federal deregulation of the airline industry, the ADA included a preemption provision prohibiting states and political subdivisions (such as Vail) from enforcing any law relating "to a price, route, or service" of an "air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft *or by motor vehicle*." 49 U.S.C. §§ 41713(b)(1), (4)(emphasis added).

5.      In 1980 Congress deregulated trucking. In 1994, Congress passed the FAAAA to ensure that states and political subdivisions did not undermine Congress' deregulation of trucking through intrastate regulation. To effectuate this deregulation, the FAAAA expressly preempted states and political subdivisions from enacting or enforcing "a law, regulation, or other provision having the force and effect of law, related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c). The ordinance at the heart of this case directly regulates the routes motor carriers can use and alters the services they can provide.

6.      In enacting the FAAAA, Congress' "overarching goal [wa]s [to] help[] ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality."

*Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 371 (2008) (internal quotations omitted).

7.     The United States Supreme Court has explained that the "ban on enacting or enforcing any law 'relating to rates, routes, or services is most sensibly read . . . to mean States may not seek to impose their own public policies or theories of competition or regulation *on the operations* of [a motor] carrier." *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 229 n.5 (1995) (emphasis added).

8.     Deregulation precludes States and political subdivisions from interfering with the enforcement of transportation contracts. "Market efficiency requires effective means to enforce private agreements. . . . [And] [t]he stability and efficiency of the market depend fundamentally on the enforcement of agreements freely made, based on the needs perceived by the contracting parties at the time." *Wolens* 513 U.S. at 230 (quotations omitted).

## PARTIES

9.     Plaintiff, Colorado Motor Carriers Association ("CMCA"), is an association devoted to advancing the interests of its motor carrier members who provide transportation services in Colorado, including providing assistance to members on compliance and regulatory issues.

10.     CMCA has approximately 600 members. CMCA members are licensed motor carrier companies, including some that are affiliated with a direct air carrier, that manage, coordinate, and schedule the movement of property throughout Colorado in interstate commerce through motor carrier permits issued by the Federal Motor Carrier Safety Administration ("FMCSA"), a division of the U.S. Department of Transportation ("DOT").

11.     CMCA's members have standing to sue Defendants in their own right.  However, given that the Town purports to decide which company is allowed to be a Town Approved Delivery Contractor, as described below, CMCA believes that CMCA can best represent its members interests while reducing the chance of prejudice to any particular member.

12.     As the issues in this lawsuit are primarily legal in nature, neither the claims asserted nor the relief requested require the participation of any particular individual members of CMCA.

13.     The customers of CMCA's members frequently contract with CMCA members to pick-up from, and deliver packages to, addresses within the town of Vail, Colorado. Some of those deliveries are made within Vail Village Pedestrian Mall Map and Lionshead Pedestrian Mall Map (the "Pedestrian Mall Areas"). A copy of a map showing the Pedestrian Mall Areas is attached as Exhibit 1.

14.     Although described as Pedestrian Mall Areas, the areas the Ordinance restricts are not boardwalks, but rather motor ways within Vail. The very same motor ways that are regularly used to transport busloads of skiers to and from Vail.

15.     The freight that CMCA members pick up and deliver to and from the Pedestrian Mall Areas vary in size and weight. Some are small packages that can be carried by hand. Others are larger items, like furniture, appliances (e.g., refrigerators, ovens, etc.), ski equipment, building materials, or other palletized goods, that cannot be transported by hand.

16.     Vail is a municipality located in Vail, Colorado, that has adopted an ordinance, 7-11, *et seq.* (the "Ordinance") which expressly regulates which motor vehicles are permitted to access or use the streets within the Pedestrian Mall Areas. *Vail Town Code* §§7-11, 7-12. A copy of the original Ordinance is attached as Exhibit 2.

17.     Defendant, Ryan Kenney, is the Chief of Police for Vail.

18.     In his capacity as Chief of Police, Chief Kenney is responsible for enforcement of Vail's laws, including the Ordinance.

## JURISDICTION

19.     This case arises under the Constitution and laws of the United States including the Supremacy Clause of the Constitution, the ADA, and the FAAAA. Jurisdiction is therefore proper under 28 U.S.C. § 1331.

## VENUE

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's claims have occurred or will continue to occur in this district.

## BACKGROUND

21.     Consumers frequently order goods and request those goods be delivered to, or picked up from, destinations within the Pedestrian Mall Areas.

22.     CMCA members effectuate those pick-ups and deliveries.

23.     Sometimes businesses or individuals contract directly with CMCA members to effectuate pick-ups from and deliveries within the Pedestrian Mall Areas.

24.     Sometimes vendors who sell goods to their customers within the Pedestrian Mall Areas contract with CMCA members to complete the deliveries to and pick-ups from the Pedestrian Mall Areas.

25.     When CMCA members agree to effectuate these deliveries, some agree to complete the delivery within a specified delivery window.

26.    Prior to August 2022, CMCA members operated motor vehicles within the Pedestrian Mall Areas, without restriction. With this unfettered access, CMCA members were not hampered in their efforts to fulfil their contractual delivery obligations; they could use motor vehicles to transport bulky items, such as skis and furniture and could accurately schedule delivery times to meet their promised delivery windows.

27.    In August 2022, Vail Council adopted the Ordinance.

28.    As originally adopted, the Ordinance expressly prohibited all motor vehicle traffic within the Pedestrian Mall Areas, except for (1) public transportation vehicles; (2) emergency vehicles; (3) vehicles owned by the Town; (4) Town approved contractors delivering commercial goods; (5) armored vehicles; (6) waste and recycling vehicles; (7) vehicles entering or exiting a parking structure; (8) property owners and their guests; (9) guests checking in or out of any accommodation establishment located in the Pedestrian Mall Areas; and (10) high volume commercial carriers (defined elsewhere as a commercial carrier that, on more than 5 days per week, delivers a high volume and variety of commercial goods to recipients in the Town). *Vail Town Code* §§ 7-11-4, 7-12-2.

29.    Some CMCA members are high volume commercial carriers.

30.    On October 3, 2023, the Town council amended the Ordinance to remove the high-volume commercial carrier exception that allowed CMCA members to use motor vehicles to effectuate deliveries within the Pedestrian Mall Areas. *Id.* §7-12. A copy of the amended Ordinance is attached as Exhibit 3.

31.    The amended Ordinance continued to allow motor vehicles to deliver commercial goods within the Pedestrian Mall Areas, so long as the operator of those vehicles fell within one

of the following categories: (1) a Town-approved contractor; or (2) vehicles owned by businesses that own loading docks within a Pedestrian Mall Area if the vehicles are clearly marked to show ownership of the vehicle.

32.     Vail has explained that CMCA members who wish to deliver commercial goods to addresses within the Pedestrian Mall Areas may no longer use motor vehicles to do so. Instead, Vail will now only allow CMCA members to effectuate deliveries by (1) tendering those deliveries to the Vail approved delivery contractor 106 West (the "Town Approved Delivery Contractor") at its loading dock which will only be available to accept deliveries between 6 a.m. and 2 p.m.; (2) leaving the deliveries at a location outside of the Pedestrian Mall Areas and informing the recipients to collect their deliveries from that location; or (3) using hand carts to effectuate the deliveries on foot.

33.     Under the amended Ordinance, CMCA members who elect to tender goods to the Town Approved Delivery Contractor, must abide by the delivery schedule Vail dictates. Specifically, Vail has decided the order in which the Town Approved Delivery Contractor will make deliveries. Food deliveries will be given priority, followed thereafter by alcohol deliveries.

34.     The Town Approved Delivery Contractor does not guarantee satisfaction of the contractually agreed upon delivery windows between CMCA members and their customers.

35.     Although the Town Approved Delivery Contractor maintains insurance to cover damage to the goods it delivers, certain categories of deliveries, e.g., pieces of art, are not covered by its insurance, effectively eliminating any recourse for the carrier that agreed to transport the goods, in the event that the goods are damaged or destroyed by the Town Approved Delivery Contractor.

36.     The amended Ordinance places interstate carriers such as those that belong to CMCA in an untenable bind: tender the goods they agreed to deliver  to the Town Approved Delivery Contractor or totally rework their routes and services, including refusing to offer delivery services of freight that cannot be delivered except by motor vehicle.

37.     Vail did not limit the type of motor vehicle that could operate on Pedestrian Mall Areas based on size or weight of the motor vehicle.

38.     In other words, Vail has directly inserted itself into the delivery process and in doing so has picked winners and losers: the amended Ordinance expressly permits certain motor vehicles to deliver goods on the Pedestrian Mall Areas but prohibits CMCA members from doing the same.

39.     The ADA and FAAAA have enumerated exceptions to the preemption of state regulation of routes. None of those exceptions permit states or municipalities to regulate or restrict access to routes based on ownership of the vehicles operating on those routes. 49 U.S.C. §14501(c)(2)(A), 49 U.S.C. §41713(b)(4)(B)(i).

40.     The United States Supreme Court has held that the exceptions to preemption are limited to those enumerated within the FAAAA and ADA. *Rowe,* 552 U.S. at 374.

41.     The United States Supreme Court has also held that the FAAAA and ADA "preempt state regulation of the essential details of a motor carrier's system for picking up, sorting, and carrying goods—essential details of the carriage itself." *Id.* at 373.

42.     Not only does the Ordinance impermissibly regulate the routes and services of CMCA members, it also introduces inefficiency into the transportation services market and is inconsistent with Congress' deregulatory goal.

43.     The Ordinance eliminates competition completely—only those entities that Vail approves may make deliveries using motor vehicles, while charging fees exclusively controlled by Vail and/or the Town Approved Delivery Contractor.

44.     The Ordinance stifles innovation—Vail, not the market, will now decide when and how deliveries will be made.

45.     The Ordinance eliminates services that the market demanded—the delivery of goods effectuated by motor carriers beyond those that Vail hand selected.

46.     The impact of the Ordinance is already being felt. Tom Higgins, the owner and CEO of American Ski Exchange, wrote an email to Vail Town Council Members to complain about the Ordinance's impact on his business. In an email, he explained that "FedEx and UPS have been unable to deliver my merchandise and hard goods efficiently because of your new policies. I've had deliveries delayed, left unattended for hours without notice, unloaded in Lionshead, or just flat out not delivered because of these new rules." *See Email from American Ski Exchange to Council Dist. List,* dated October 3, 2023, a copy of which is attached as Exhibit 4.

47.     The owner of Troy's Ski Shop sent the Vail Town Council a similar complaint. "Yesterday I received a call from FedEx Freight. I was told they could not deliver to the shop. I could either receive the boots on the South Frontage road or pick up the pallet at the Gypsum distribution center. I picked up 50 pair of ski boots in Gypsum this morning, then drove to the shop and dropped them off. This was not convenient and not a practical way to transport merchandise to the shop. This was one of the smaller shipments. Larger shipments are going to be even more of a challenge." *See Email from Troy Goldberg to Council Dist. List,* dated September 27, 2023, a copy of which is attached as Exhibit 5.

48.     In other words, the Ordinance represents the manifestation of "the very effect that federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services motor carriers will provide." *Rowe,* 552 U.S. at 373.

49.     On September 28, 2023, CMCA sent Vail and Chief Kenney a letter explaining why the FAAAA and ADA preempt Vail's enforcement of the Ordinance. A copy of the letter is attached as Exhibit 6.

50.     On October 6, 2023, Vail's lawyers responded to CMCA's letter. In that letter, Vail cited cases confirming the authority of municipalities to enact traffic and other restrictions on local motor ways. A copy of the letter is attached as Exhibit 7.

51.     Almost all of the authorities on which Vail relied *pre-dated* deregulation of the transportation industry. Importantly, none of the authority on which Vail relied provides any basis to conclude that Vail can regulate the routes and services of motor carriers.

52.     Vail confirmed in its letter that "the Town will not delay implementation or enforcement of the" Ordinance.

## COUNT I

## THE FAAAA AND ADA PREEMPT THE ENFORCEMENT OF VAIL'S RESTRICTIONS ON CMCA MEMBER'S ROUTES AND SERVICES

53.     Plaintiff incorporates herein by reference each and every allegation contained in the foregoing paragraphs.

54.     A case or controversy has arisen by virtue of Defendant Kenney's enforcement of the amended Ordinance to preclude CMCA members from operating motor vehicles on Pedestrian Mall Areas.

55.     The FAAAA and ADA expressly preempt Vail's regulation of the routes and services CMCA members offer.

56.     A declaration of the parties' rights and interests is necessary in order to resolve this dispute and prevent the continuing violation of the FAAAA and ADA. A declaratory judgment in this matter is both necessary and proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

## COUNT II

## INJUNCTIVE RELIEF

57.     Plaintiff incorporates herein by reference each and every allegation contained in the foregoing paragraphs.

58.     Vail's continued enforcement of the Ordinance is causing and will continue to cause irreparable harm to Plaintiff's members by disrupting the market-driven routes and services that those members would otherwise provide and utilize. The impact on the transportation market resulting from Vail's interference with the CMCA members' routes and services is difficult, if not impossible, to calculate.

59.     There is a reasonable likelihood that Plaintiff will prevail on the merits of its claim.

60.     The equities weigh in favor of Plaintiff's request. The FAAAA and ADA preempt state regulation of routes and services and do not permit states and localities to impose restrictions

on motor carriers based on who owns the vehicles being operated. The Ordinance does not prohibit *all* motor vehicles from operating on Pedestrian Mall Areas.

61.     On the other hand, refusing to enjoin Defendants will subject Plaintiff and its members to the Defendants' continued enforcement of state laws, in this instance municipal ordinances, that palpably interfere with their prices, routes, and services in violation of the FAAAA's and ADA's prohibition and preemption of those laws.

62.     Public interest also weighs in favor of enjoining Defendants from interfering with the market driven manner in which motor carriers transport property.

## PRAYER FOR RELIEF

Plaintiff Colorado Motor Carriers Association prays that the Court find in its favor on its Complaint and grant the following relief:

I.     A declaratory judgment concluding that Defendants' enforcement of the Ordinance is in violation of the Supremacy Clause of the United States Constitution because it disrupts the market for motor carrier services relating to the transportation of property and is, therefore, preempted by the FAAAA and ADA;

II.     A preliminary injunction to remedy and prevent Defendants' violation of the Supremacy Clause on the grounds set forth above;

III.     A permanent injunction to remedy and prevent Defendants' violation of the Supremacy Clause, on the grounds set forth above; and

IV.     All other relief the Court finds justified and appropriate.

Dated: October 20, 2023                    Respectfully submitted,

/s/ Adam C. Smedstad
**Adam C. Smedstad**
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
5470 Shilshole Ave NW, Suite 520
Seattle, WA 98107
Phone: 206-288-6192
Fax: 206-299-9375
E-mail: asmedstad@scopelitis.com

**Shannon McClellan Cohen**
**James A. Eckhart**
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Phone: 317-637-1777
Fax: 317-687-2414
E-mail: scohen@scopelitis.com
E-mail: jeckhart@scopelitis.com

/s/ Sterling J. LeBoeuf
**Sterling J. LeBoeuf**
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
Phone: 303-892-9400
Fax: 303-893-1379
E-mail: sterling.leboeuf@dgslaw.com

*Attorneys for Plaintiff,*
*Colorado Motor Carriers Association*

## Verification

I, Gregory D. Fulton, declare as follows:

I serve as the President and Chief Executive Officer for Colorado Motor Carriers Association (CMCA), the Plaintiff in this matter. I have personal knowledge of the facts set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify as to the matters stated herein.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Executed this 20th day of October, 2023.

Gregory D. Fulton
President and CEO