IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02752-CNS-STV

COLORADO MOTOR CARRIERS ASSOCIATION,

      Plaintiff,

v.

TOWN OF VAIL and
POLICE CHIEF RYAN KENNEY,

      Defendants.

---

## ORDER

---

    This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO Motion") (ECF No. 11), which was filed on October 27, 2023. Defendants filed a Response on October 30, 2023 (ECF No. 15). For the following reasons, the Court GRANTS IN PART the TRO Motion.

## I. BACKGROUND

    The Colorado Motor Carriers Association ("CMCA") is a trucking industry organization "dedicated to advancing the interests of its motor carrier members who provide transportation services in Colorado" (ECF No. 12-2, ¶ 2; *see id.*, ¶¶ 3–6). Members of the public frequently contract with CMCA Members to pick-up from, and deliver packages to, addresses within the Town of Vail, Colorado (the "Town"), including addresses encompassed within the Vail Village Pedestrian Mall and the Lionshead Pedestrian Mall (the "Pedestrian Mall Areas") (*id.*, ¶¶ 7–8).

Prior to August 2022, CMCA Members operated motor vehicles to conduct pick-ups and deliveries within the Pedestrian Mall Areas without restriction, meaning that they could easily transport bulky or voluminous items and could accurately schedule delivery times to meet their promised delivery windows (*id.*, ¶ 9).

In August 2022, the Town enacted Ordinance No. 15 (the "Ordinance"), which regulated which motor vehicles were permitted to access or use the Pedestrian Mall Areas. Vail Town Code § 7-11, *et seq.* As originally enacted, the Ordinance prohibited all motor vehicle traffic within the Pedestrian Mall Areas, with an enumerated exception for "high-volume commercial carriers" (i.e., commercial carriers that, on more than five days per week, deliver a high volume and variety of commercial goods to recipients in the Town). *Id.*, §§ 7-11-4, 7-12-2.

On October 3, 2023, the Town amended the Ordinance to remove the high-volume commercial carrier exception that formerly allowed CMCA Members to use motor vehicles to effectuate deliveries within the Pedestrian Mall Areas. Vail Town Code, § 7-12. As amended, the Ordinance continues to allow motor vehicles to deliver commercial goods within the Pedestrian Mall Areas, so long as the operators of those vehicles fall within one of two categories: (1) a Town-approved contractor; or (2) vehicles owned by businesses that own loading docks within a Pedestrian Mall Area if the vehicles are clearly marked to show ownership of the vehicle.

As a consequence of the Ordinance's recent amendment, CMCA Members who wish to pick-up or deliver commercial goods to addresses within the Pedestrian Mall Areas may no longer use motor vehicles to do so. Instead, CMCA Members may only (1) tender their deliveries to an approved contractor, 106 West (the "Town-Approved Delivery Contractor"), at its loading dock, which only accepts deliveries between 6:00 a.m. and 2:00 p.m.; (2) leave their deliveries at a

2

location outside of the Pedestrian Mall Areas and inform the recipients to collect the commercial goods from that location; or (3) use hand carts to make pick-ups or deliveries within the Pedestrian Mall Areas on foot (ECF No. 12-2, ¶ 10).

Under the amended Ordinance, CMCA Members who elect to tender goods to the Town-Approved Delivery Contractor must abide by a strict delivery schedule (ECF No. 12-2, ¶ 11). More specifically, the Town dictates the order in which the Town-Approved Delivery Contractor will make deliveries—food deliveries are given priority, followed thereafter by alcohol deliveries (*id.*). The Town-Approved Delivery Contractor does not guarantee satisfaction of the contractually agreed-upon delivery windows between CMCA Members and their customers (*id.*). Although the Town-Approved Delivery Contractor maintains insurance to cover damage to the goods it delivers, certain categories of goods (e.g., pieces of art) are not covered by its insurance, effectively eliminating any recourse for the CMCA Member if the goods are damaged or destroyed by the Town-Approved Delivery Contractor (*id.*).

Because the Ordinance has rendered CMCA Members unable to deliver commercial goods directly to shops and business owners within the Pedestrian Mall Areas, customers have variously experienced deliveries that were "delayed, left unattended for hours without notice, . . . or just flat out not delivered" (ECF No. 1-4 at 2; *accord* ECF No. 1-5 at 2). Accordingly, on October 20, 2023, the CMCA filed this action seeking (i) a declaratory judgment concluding that Ordinance No. 15 is preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c) ("FAAAA"), and the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b) ("ADA"), and (ii) preliminary and permanent injunctive relief (*see generally* ECF No. 1). The

instant TRO Motion promptly followed, requesting that the Court enjoin Defendants from enforcing the Ordinance.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes courts to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to the court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933). When the opposing party has notice, the procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

The Tenth Circuit specifically disfavors injunctions that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford all the relief that the movant could expect to win at trial. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2004). A request for disfavored injunctive relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)). Accordingly, where a movant requests a disfavored injunction, the movant "must make a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Colo. v. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (quotation omitted).

## III. ANALYSIS

In view of the factors outlined above, the Court concludes that a TRO is warranted.

### A. Likelihood of Success on the Merits

Plaintiff argues that it is reasonably likely to succeed on the merits because the Ordinance is expressly preempted by the FAAAA and ADA (ECF No. 12 at 10–13).

The Supremacy Clause of the U.S. Constitution empowers Congress to preempt state law; because of the supremacy of federal law, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)); *see* U.S. Const. art. IV, cl. 2. Pertinent here, express preemption of state law occurs when Congress "defines explicitly the extent to which its enactments pre-empt state law." *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) (quotations and alteration omitted). To determine whether a state law is expressly preempted by a federal preemption clause, courts "apply ordinary principles of statutory interpretation, looking initially

5

to the plain language of the federal statute." *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (citation omitted).

The ADA provides that a state or political subdivision

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle.

§ 41713(b)(4). Similarly, the FAAAA, which mirrors the ADA's preemptive framework, provides that a state or political subdivision "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." § 14501(c)(1); *see Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (in enacting the FAAAA, Congress copied the ADA's preemption language).

Here, Plaintiff argues that the FAAAA and ADA expressly preempt the Ordinance because it is "a law, regulation, or other provision . . . related to a price, route, or service of [] motor carrier[s]" (ECF No. 12 at 10). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (in the ADA's language, the words "relat[ed] to" "express a broad pre-emptive purpose"). In so arguing, Plaintiff relies on *Rowe*, in which the U.S. Supreme Court explained that if the FAAAA preempts state laws that promote carriage, logically "it must preempt state regulation of the essential details of a motor carrier's system for picking up, sorting, and carrying goods—essential details of the carriage itself." *Rowe*, 552 U.S. at 373. Plaintiff further references the Supreme Court's "connection with or reference to" preemption test set forth in *Day*:

> [A] state law has an impermissible "reference to" [carrier] prices, routes, or services if the law "acts immediately and exclusively"

6

> upon [carrier] prices, routes, or services, or if "the existence of" [carrier] prices, routes, or services "is essential to the law's operations." A state law that does not "refer to" [carrier] prices, routes, or services under this test may nevertheless be preempted as impermissibly "connected with" them if the law (1) governs a central matter of [a carrier's] prices, routes, or services; (2) interferes with uniform national policies regarding [carrier] prices, routes, or services; or (3) will have acute economic effects that effectively limit [carriers'] choices regarding their prices, routes, and services.

*Day*, 45 F.4th at 1186. Plaintiff argues that the Ordinance in this case meets both the "reference to" and "connection with" portions of the Day test because, as set forth above, "it directly regulates the routes motor carriers can use and alters the services they can provide" (ECF No. 12 at 11).

In response, Defendants argue that the Ordinance cannot be expressly preempted by the FAAAA or the ADA, because both statutes exempt motor vehicle safety regulations from preemption (ECF No. 15 at 5–12). In particular, Defendants observe that the FAAAA contains, in a subsection titled "Matters not covered," an explicit safety regulation exception: "Paragraph (1) . . . shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." § 14501(c)(2)(A). Defendants point to a nearly identical exemption contained in the ADA: "Subparagraph (A) . . . shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." § 41713(4)(B)(i). Defendants further argue that the Ordinance falls within these exceptions to the FAAAA's and ADA's preemption provisions because the Ordinance is "genuinely responsive to safety concerns"—i.e., the original Ordinance was enacted to "increase the safety of pedestrian traffic" and "reduce congestion" in the Pedestrian Mall Areas, and it was later amended to better address "pedestrian and vehicular circulation" in those areas (ECF No. 15 at 11). *See City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002)

(local regulation of "[carrier] prices, routes, or services that is not genuinely responsive to safety concerns garners no exemption from preemption").

Noting that the parties' arguments present an extremely close call, the Court finds that Plaintiff has demonstrated a reasonable likelihood of success on his claims of express preemption. Closely scrutinizing the language of both statutes' preemption provisions and safety exemptions, it would appear to the Court that, by its plain language, the Ordinance constitutes "a law, regulation, or other provision . . . related to a price, route, or service" of motor carriers as contemplated by both the FAAAA's and ADA's preemption provisions. Defendants' justification for enacting the Ordinance, however, requires some inquiry beyond its plain language to glean whether it is "genuinely responsive to safety concerns" (as opposed to, say, the Town's aesthetic or economic concerns) such that it comes within the FAAAA's and ADA's safety exemptions. Accordingly, at this early stage, the first TRO factor weighs—*very slightly*—in Plaintiff's favor.

### B.  Irreparable Harm, Balance of Equities, and Public Interest

Plaintiff further argues that, aside from likelihood of success on the merits, the other equitable factors governing issuance of preliminary injunctive relief weigh in favor of granting a TRO in this case (ECF No. 12 at 13–15). The Court agrees.

Regarding the "irreparable harm" factor, Plaintiff "must demonstrate a significant risk that [it] . . . will experience harm that cannot be compensated after the fact by money damages." *Carranza v. Reams*, 614 F.Supp.3d 899, 917 (D. Colo. 2020) (quoting *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016)). For substantially the reasons outlined by Plaintiff in its TRO Motion, the Court concludes that Plaintiff will likely suffer such harm absent a TRO; to wit—

- If the Ordinance remains in force, and the CMCA Members were subject to regulation by both the Town and the federal government, irreparable injury would result "by

8

depriving the [carriers] of a federally created right to have only one regulator in matters pertaining to rates, routes, and services (ECF No. 12 at 13–14 (quoting *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 783 (5th Cir. 1990))).

- If the Ordinance remains in force, irreparable injury would result from CMCA Members being forced to choose between violating the law and incurring any attendant penalties, or "suffer[ing] the injury of obeying the law during the pendency of the proceedings and any further review" (*id.* at 14 (quoting *Morales*, 504 U.S. at 381; *accord Am. Trucking Assocs., Inc., v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009))).

- "No amount of money damages can redress a CMCA Member's failure to timely deliver to a customer or a failure to deliver altogether" (*id.*). As described above, the Ordinance's enforcement so far has already resulted in multiple deliveries of commercial goods to customers within the Pedestrian Mall Areas being delayed, left unattended, or simply undelivered (ECF No. 1-4 at 2; *accord* ECF No. 1-5 at 2).

The Court finds that Defendants' response does not persuasively counter Plaintiff's assertion of irreparable harm in the absence of a TRO (*see* ECF No. 15 at 13–15).

Further, the Court finds that the balance of equities tips in Plaintiff's favor, and that the public interest is served by the entry of a TRO in this matter. For one thing, Defendants do not have a strong interest in enforcing a law that is reasonably likely to be found constitutionally infirm. *Chamber of Commerce of U.S. v. Edmonson*, 594 F.3d 742, 771 (10th Cir. 2010); *accord Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest favors preliminarily enjoining potentially unconstitutional state statutes). Further, as Plaintiff correctly observes, under the Supremacy Clause, "the relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." (ECF No. 12 at 15 (quoting *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quotations and alteration omitted)). Once more, the Court finds itself unpersuaded by Defendants' contrary

arguments respecting the "balance of equities" and "public interest" factors (ECF No. 15 at 15–16).

*  *  *

Based on the foregoing, Plaintiff has established its entitlement to a TRO under the four required factors.

### C.  Scope of the TRO

Separately, Defendants argue that in the event a TRO is issued, the Court should not enjoin enforcement of the Ordinance wholesale, but rather, should enjoin enforcement of the Ordinance as amended in October 2023. The Court agrees.

"The purpose of a [TRO] is to preserve the status quo and prevent irreparable harm just so long as is necessary to hold a preliminary injunction hearing, and no longer." *Engility Corp. v. Daniels*, No. 16-cv-2473-WJM, 2016 WL 8358509, at *1 (D. Colo. Oct. 25, 2016) (quotations and alteration omitted). As Defendants point out, the status quo is defined as "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing" (ECF No. 15 at 16 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005))). *See also Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (describing the status quo as "the last peaceable uncontested status existing before the dispute developed") (internal citations omitted). Here, prior to the Ordinance's amendment in October 2023, neither Plaintiff nor any individual motor vehicle carrier challenged the original Ordinance restricting motor vehicle access from the Pedestrian Mall Areas. As such, the period between the Ordinance's original enactment in August 2022, and the Ordinance's amendment in October 2023, constitutes the "last uncontested status between the parties."

Accordingly, while the Court declines to completely enjoin enforcement of the Ordinance, it will enjoin enforcement of the Ordinance as it was amended in October 2023.

## IV.  CONCLUSION

Consistent with the above analysis, Plaintiff's TRO Motion is GRANTED IN PART (ECF No. 11). The Court therefore ORDERS as follows:

1.  Defendants are HEREBY ENJOINED from enforcing the Ordinance as amended on October 3, 2023, until further Order of the Court. The pre-amendment version of the Ordinance (i.e., the version enacted in August 2022) remains in full force and effect.

2.  **A Hearing on the Motion for Preliminary Injunction (ECF No. 13) is set for November 9, 2023 at 9:00 a.m.** in Courtroom A702, 901 19th Street, Denver, Co 80294.

DATED this 31st day of October 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge